All right, the first case we're going to hear is Painters Mill Grille v. Brown, and Mr. Weinlander will hear from you. Thank you. Good morning, Judge Duncan and Judge Floyd. My name is Richard Weinlander. I represent the appellants, Painters Mill Grille, Alessandro Vitale, Sergio Vitale, and Aldo Vitale. The Vitales are restauranteurs in Baltimore, Maryland. They sought to open a third bar and restaurant called Shebo in the Ellings Mills area of Maryland. They entered into contracts with Howard Brown, actually leases 100 Painters Mill Road and David Brown Enterprises. During the course of the lease, the demographics of Ellings Mills changed drastically. It went from a prominently rural white neighborhood to an African American neighborhood. As the demographics changed, the clientele of Shebo changed over those years. When it became apparent that the clientele was mostly African American, the three principal defendants, Howard Brown, Lee Sachs, and Carmela Bell, as alleged in the complaint, began a series of actions intending to and, in fact, driving the Vitales out of business. They would lock the doors to the restaurant during restaurant hours. They would turn off the lights during restaurant hours. They would refer to the clientele as the element, the undesirable element, blacks and niggers. There came a point in time when the Vitales had enough. They said, we're going to sell the restaurant. And, indeed, they were able to find buyers for the restaurant. Unfortunately for them and the buyers, the buyers were African American. Mr. Ernie Hines and his wife, Mr. Hines was one of the board of directors of the Department of Education. His wife was in insurance and the third partner. In your brief, there's a fact question that I'm curious about. In your brief, you talk about the notion that the lessors did approve the sale. That's correct. And in your complaint, you said they had not. Is there a timing issue on that or what? Actually, it was. When I did an in-depth affidavit with Mr. Vitale, he said, no, no, no. This deal was done. This was simply a meet and greet. They're going to meet the landlord. They're going to meet Mr. Brown. It's done because the liquor license had transferred from the Vitales to the Hineses. We needed the consent of Brown and the defendants in order to do that. You're absolutely right, Judge. What is the fact? The fact of the matter is the deal was done. It was done. So consent was given? Consent was given. And we were ready to prove that. Writing the brief, I said, wait, I didn't actually allege that. I understand. I just needed to know the fact because the causes of action, there's some statutory causes of action under federal law and there's some state causes of action. It implicates those causes of actions differently. Absolutely, Your Honor. And that's the fact. If the case is remanded, that's the fact we're going to prove. And there's another, not to point out the obvious, but I'm going to point it out to you. There's another fact. One of the facts is we allege that the Vitales had standing to vindicate the rights of their African-American clients. In the complaint, what I allege is that they personally guaranteed the leases, which gives them loss until the build-out was $500,000, until that was paid. That's a personal loss. But in the affidavit, I point specifically to the fact, well, they had to refinance that build-out, and out of pocket, they're out of pocket, a half a million dollars. Yeah, but I'm not sure guarantors are subrogated to the interests of the parties. It seems to me, in this case, the fight has to be a fight between the contracting parties, which in this case are corporations. And I'm not sure that the district court got it wrong in saying that just because the stockholders have a financial interest or the guarantors have a financial interest, they can likewise bring the action that the corporation has. Well, there is Judge Murray's opinion, which indicated that white owners of a business have the right to vindicate the rights of their African-American clientele, and they have standing to do so. And one of the elements of damage is pointed out by Judge Murray, and two other cases, the South Carolina district court case in this circuit and another Maryland case, and actually the Supreme Court said who else has better standing to vindicate the rights of African-Americans than the white owners of the business that was discriminated against. But I've got your point, and I'll let that pass. Do you plan to address at all the issue of the appealability, whether we have an appealable order here? I believe that we did, and the court passed an order denying their motion to dismiss on that basis. But this is what Judge Bennett did. He dismissed the case based on the motions to dismiss. He ordered the clerk to close the file, and we appealed the case. By the time we appealed the case, the statute of limitations had run on all the underlying state torts and indeed the federal torts, and because of that, I think the case law is that we have a right, and it's a final appealable order. Which would mean, would it not, that you waived your right to seek to amend the complaint? That was the issue that I did not, was unclear to me. That is the defendant's position? No, I'm asking. Okay, well, let me say, if you're in the mind. You've got to waive it, because the only way it makes it appealable is you're standing on the complaint. That's correct, and that's exactly what I did. But if in the event it's remanded, wouldn't the district court judge have the ability under the rule to say, oh, you know what, you are, I will, in the interest of justice, I may let you amend it. But I think that decision. That's a real circumvention around the whole issue. The idea is if you wanted to amend it, you had an opportunity, and you chose not to deliberately in order to get an appealable order. If you get a remand, now you're going to go back and say, hey, I really did want an amendment, contrary to what I did before, and what I did before was just a manipulation in order to get to the court of appeals. That's the position you have to be taking if you're trying to preserve it? Well, I think what I intended to do, and it actually sounds pretty bad as you say it. Well, I use the word manipulation. Well, that's the one that gets me. But it does. In order to have an appealable order, you have to waive, don't you? I'm clear on that. And I believe if the case is remanded, then I can stand on the complaint because I can bring in what I'll be facing next as a motion for summary judgment. We have abundant facts in order to compete and defeat that. And hopefully that answered your question. So I am stuck with my complaint, and I'm fine with that if we get to that point in this litigation. I would say this. I think it's kind of clear or abundantly clear that Judge Bennett mixed or combined facts alleged in the complaint with facts alleged by the defendants in their motions for summary judgment. Let me give you an example. He dismissed the corporate lawyers. Nowhere in the complaint do I say or is it alleged that these individuals, Carmela Bell and Lee Sachs, are lawyers. Never there. What Judge Bennett, I'm guessing, did is he looked at the affidavits of Carmela Bell, he looked at the affidavit of Lee Sachs, and it said, Oh, we're lawyers, and we work for Howard Brown and a bunch of Brown enterprises. And from that fact, That's what it doesn't make. They're just employees. It doesn't matter whether they were lawyers or not. They were clearly employees. And they sat at the second closing and they made some comments, which you say gives rise to a cause of action against them. That's correct. And they were individually sued for their own racial discrimination and their own comments. I understand that. Okay. But I'm not sure the fact, what you're suggesting is the fact that the district court alluded to them as lawyers makes any difference. Well, I think he did more than just allude to them as lawyers. He said, oh, based on the doctrine, this doctrine, this defense that lawyers have that they can't be sued in the course of their giving consent, giving advice to clients, I'm dismissing them as defendants. That's what he did. And those facts only came from the defense, and it only came from the defense and their affidavits. Now, there were two instances in which the district court could, and I don't see why it couldn't, just take judicial notice of the fact that Bells and Sacks were licensed attorneys. That's a matter of public record. And that Painter's Mill initiated 17 actions. I don't obtain judgment. Why aren't both those facts of public record of which the court could take judicial notice? You're quite correct. They are. Okay. But Judge Bennett went the next step. Not only are they lawyers, which was public record, but they were lawyers and they were operating and giving advice to Brown and his enterprises at the time they did these acts. But that has to be your position, doesn't it, if you're going to allege that they discriminated against your client in some sort of representative capacity? That's correct. Absolutely correct. But he had to go out, and he did go outside of the complaint in order to do that. Again, the public record is they're lawyers. The facts alleged in their complaint were they were in their affidavits was we were lawyers for Brown, and we were lawyers for Brown's various entities, and we were acting on behalf of those entities. Those are the facts. That's where he went outside the facts and converted his ruling on a motion to dismiss to one of motion for summary judgment. And if I may add, there's also that defense, that lawyer defense, is really factual, factually intensive. And we have an added element here that Lee Sachs was actually at one point the lawyers for Painter's Milk Grill. He did the articles of the corporation. It was an exhibit to our response to the motion for summary judgment. He actually signed it. We had the corporate documents that he signed on behalf of the plaintiffs. So these are all facts outside of the complaint, and the lawyering is a fact outside of the complaint. I submit. You may see it differently. Well, no, I just I'm still not clear why he couldn't take judicial notice of the fact that they were lawyers. He could. Or that or the the situation with respect to the challenging the the lease for nonpayment of rent. You're right. I'm not quite clear. And I don't I'm still baffled as to the challenge because you're alleging you rely on that relationship to allege the discriminatory comments that were made. Let me. Yes, I attribute those to them being employees, agent and servants and employees of the corporation. Absolutely. And that's what's alleged in the complaint. Nowhere is it alleged in the complaint that there are lawyers. But you're saying you go to the public record. You say, hey, Sachs and Bell, they're lawyers. All right. But that doesn't mean even though there are lawyers, were they working for Brown in the capacity of the lawyers? The only place we get that is from the affidavits, which are outside of the complaint. And that's where the commingling of facts and the conversion to a motion rolling on a motion for summary judgment. I'm sorry to belabor this, but your complaint says that at all the relevant times, they were the agents of. Absolutely. So you have a lawyer that's acting as something other than a lawyer for the corporation. You have a lawyer. It wasn't really good lawyer. And it's the he's the maintenance man or she's a maintenance person at this point in time. Just because they're a lawyer doesn't mean they're acting in that capacity for their employer at that point in time. That's why I keep. That's why I say Judge Bennett went outside the facts to find out to their affidavits. They were working for his lawyers. Not only do you allege it, you need it. You asked the second meeting where they talked about what kind of place you're operating, some kind of shack or whatever. The only persons present were Saks and Bell. Correct. And you said that they were speaking on behalf of the corporate defendants. That's correct. There's no doubt. But that doesn't mean they're speaking as lawyers. It doesn't mean that that sets up a defense for them. No. They could be speaking as laymen, you know, bigots. But it puts them in the course of their, it takes you out of the state tort law. It makes them the agents, the person. What interest do they have? The interest is the contractual interest that's being interfered with. And these people were acting on behalf of the corporation in doing that. And you get stuck a little bit with that allegation. Not a little bit. You're stuck with it. I'm sorry. I'm stuck with it. And actually I embrace it because it just goes to show their personal liability for their personal torts. I thought you just told Judge Duncan that it's not necessarily so. Well, they are. Well, which part isn't so? They were working.  Well, it depends whether you're talking about the tort case under Maryland law where they'd have to be acting in their own self-interest. In other words, to get them out of the contractual umbrella, you have to get them acting for something in their own interest in committing the tort. And you allege that. You allege, make different arguments. Yes. And my direct response to that is what they had in this fight is they were bigots. And they wanted them out of the building, too, because they had to pass them every day. They may have been. But that's what I'm alleging. I understand. But you also allege that they made those statements in the course of their employment. Yeah. Absolutely they did. Okay. They did make it in the course of their employment. Fair enough. And I just think that they're personally responsible for their own racial discrimination. Well, that question, does that follow? Well, yes. And that's your question. Do you think it follows as a matter of law? Yes. I think they are personally responsible. I think the intent of the Civil Rights Actions and statutes are to target. No, no. This is not the Civil Rights Statutes. This is the state tort case. The state court. Okay. On the Civil Rights Act, you have different problems. The state court case involves their personal actions. Okay. The protection they would get, they're not protected under state law from their acts that are tortious in themselves. In their own self-interest. Right. Yeah. They're tortious in themselves and in their own self-interest. And my position, that's what they were doing. That's why we're here. That's not what you allege. That's what I allege. But I thought I'd at least get the opportunity to approve it. Thank you, Your Honor. Okay. Thank you, Mr. Weinlander. We'll hear next from Ms. Katka. Thank you, Your Honors. I will defer five minutes of the appellee's time to Mr. Vanderwood to address the issue with the dismissal of the attorneys, Ms. Bell and Mr. Sachs, as well as the dismissal of the conspiracy claim. Who do you represent? We represent 100 Painters Mill, Howard S. Brown, and David S. Brown. Both of you do? No. I represent the corporate defendants as well as Mr. Brown individually. And Mr. Vanderwood represents Ms. Bell and Mr. Sachs, the late Mr. Sachs. Let me ask you just a formal question. We received a notice that Mr. Sachs is deceased and a substitution. Does either side have any problem with substituting the estate? No, Your Honor. We've consented. Okay. Thank you. Your Honors, as we pointed out in our briefs and as it's already been stated here, the plaintiffs and appellants here have waived their right to amend this complaint. And in the briefs as well as here before in their argument, what the plaintiffs would like to do is still look outside the allegations of the complaint. But the plaintiffs want their cake and to eat it, too. They can't have that. So we are bound in this review, we're bound to the allegations of the complaint. I think I understood that from Mr. Weinlander's comment. Mr. Weinlander asserts as a fact that the landlord gave consent to the assignment. Yes, he does, but that's alleged outside of the complaint. And, again, we are bound by the allegations of the complaint. As I recall, it was in an affidavit that wasn't filed with the complaint. Am I remembering that correctly? It was an affidavit that was filed with plaintiff's opposition to the summary judgment motions that were filed. However, Judge Bennett dismissed this as a 12B6 motion rather than a summary judgment. I thought they alleged to have made a concession in their brief that assignment had been given, that approval had been given. The plaintiff's? Mr. Weinlander's brief, yes. Yes, I'm sorry. And that's also alleged in the brief here before this Court. But, again, we have to go to what's in the record and the allegations of the complaint. If you make a judicial admission, and the truth of the matter is I think it cuts against them on all the statutory claims. In other words, the contractual interest is the interest in having that approval. And if the approval was given, there is no dispute over it. That is correct, Your Honors. But you say we can't take their concession in the brief. And his statement here in court that consent was given. Well, Your Honor, I take that back. We can take concession that the assignment was granted and was approved. Well, what's the fact of the matter? We're sort of part of the matter. Well, this is the point, Your Honor. The briefs that were submitted by the appellants is filled with facts outside of the allegations of the complaint. It seems to me that in certain civil rights statutes, the right to contract and to interfere with that right to contract and to enforce the contract for racial reasons is illegal. And in this case, the contractual issue at hand, the only contractual issue, is whether the landlord consented or withheld his consent. Now, if he did not withhold his consent, it seems to me that undermines the claim that the enforcement of the contract was in any way interfered with. There's no harm done. That's correct, Your Honor. Now, they may have been bigots, probably were, if the allegations are true. If the allegations are true. But that's right. But we're talking about a claim under specific statutes that require a contractual interest, either the enforcement or the entering into or whatever. Correct, Your Honor. That's right. If the plaintiffs here are saying that the assignment was approved, then the issue is moved as to interference with the contract for the assignment. Well, I don't know if they can interfere with the contract because they always had an interest. I'm talking about the civil rights statutes. As to the civil rights statutes for the... 81, 82, and 85. Correct. 1981, 1982, and 1985. Those are prohibiting or granting the right to, regardless of race, to enter into a contract. And prohibiting the refusal to enter into a contract or enforce a contract based on racial animus or racial conduct. That's right, Your Honor, and that's evidence that we approved... And the contract in this case, the only contractual hook, they could have assigned it. If that clause was not in there, they could have signed it regardless. And so the question is, did they withhold their assignment based on race? And in the complaint, that's what they allege. Correct. But now in court, he admits that consent had been given, and in his brief he states that. That is... How do we take all that? How do you take all that? Yeah. Well, if you take the plaintiff's concession, then... Well, I'm not saying if. I don't want you to make your argument. Well, if the plaintiffs are stating that the assignment was approved to an African-American couple, then who they were trying to assign the lease to, then they have no claim for denial of the right to enter into a contract. Well, under 81, 82, yeah. For 1981 and 1982. And the conspiracy claim as well. And as to then also the Maryland claims as well. Well, the Maryland claims are a little different. I think they're the flip side of that. I think there's a tension in the way the allegations are made. And I understand Mr. Weinlander has some facts, and he's trying to put them into various causes of action. And it may or may not be easy. And he can plead one way or the other. But it seems to me when he makes an allegation of fact that supports his 1981, 82, and 85 claims, he of necessity interferes with his state tort claims. That's exact. And when he makes an allegation in support of the state tort claims, which is that there was consent given, then it undermines his claims under. And it seems to me we're entitled to rely on some fact that's being alleged unless it's totally unreasonable. I mean, under a dismissal standard, you know, we look to the complaint as alleged and rely on that. That's right. The facts are competing against each other as to the Maryland state actions versus the federal state actions. To their 1985 claim. Yes. How can there be a conspiracy in this case? I would defer to Mr. Vanderwood to the 1985 claim. He will address that. Just very shortly, there cannot be conspiracy within agents of a corporation, even if we're taking that. Forget about the fact that Ms. Bell and Mr. Sachs were the attorneys. It is alleged in the plaintiff's complaint that they were acting as agents of the corporation and agents of a corporation cannot conspire with the corporation and with itself. So there cannot be a conspiracy claim either in this case. And I would just like to also address to the court that the counts 8 and 9 are not on appeal. The pre-chip contract and as well as the abusive process that has not been raised on appeal and should also be affirmed. Unless the court has any other questions. All right. We'll hear from Mr. Vanderwood. Good morning, Your Honor. John Vanderwood on behalf of Carmela Bell and now the estate of Lee Sachs. And I would just like to follow up on this issue of the consent being given. And that's certainly not what's pled in the complaint. And that came out in the brief. That was the first time I had seen that. But I would agree with Your Honor that if that's now his concession, then there's no there's no interference by anyone. Because the whole basis of the alleged interference with the contract was that they failed to give the consent to assign the lease to the hind. So if that if that consent has now been conceded as having been given by the landlords, then I don't think it mattered what anybody did under these causes of action in the context of of these negotiations or whatever. But as far as the points that I'd like to address a little more is the issue of the attorney client relationship between Carmela Bell, Lee Sachs and the other defendants. As Your Honor recognized, it isn't pled in the complaint that they were attorneys, but the court can certainly take judicial notice of the public record that they are attorneys. I would focus the court again to what's pled in the complaint. The complaint says that Carmela Bell and Lee Sachs at all times were acting as agent servants and employees of the other defendants. And as such, as attorneys, the only other allegations in the complaint itself relate to their dealing with prospective tenants for these clients, going to a meeting on behalf and the complaint specifically says they were there as representatives of the landlord at the meeting. So the factual allegations in the complaint are very clear that these individuals who were attorneys were acting in that capacity. And that takes care of the 1985. I believe it takes care of the 1985 for them as well. But I think the 1985 is is there can't be a conspiracy as as Ms. Kotka mentioned, the all of the entities are all of the individuals that are here. Mr. Brown, as well as Carmela Bell and Lee Sachs are alleged in the complaint to at all times be acting on behalf of the corporate entities. And as such, as Judge Bennett recognized, there can't be a conspiracy between a corporation and its agents. They are legally considered one in the same. You can't conspire with yourself is the legal analysis, I believe. And that goes even a step further with Carmela Bell and Lee Sachs, my clients, because there's case law that also says that attorneys cannot conspire with their clients. And again, this is unless they have a specific and identified personal interest outside of the legal representation, or in the case of a corporate employee outside of the corporate relationship. And again, this was granted as a motion to dismiss. The court needs to look at just the complaint itself. And what's plot in the complaint is that all of these entities, all of these individuals were acting solely and exclusively as representatives of the corporate entity. So on behalf of Mr. Sachs or the estate of Mr. Sachs and Ms. Bell, since they were acting as attorneys as Judge Bennett recognized, they cannot be sued by a third party for their legal representation. I don't believe there's any allegations in the complaint, quite frankly, that provide any. The allegation of using the term nigger was in an isolated statement in the complaint. I think the case law is clear that even if that was used, which is denied, of course, but the complaint, it's sort of hanging out there in a paragraph. It doesn't say when it was used, where it was used, how it was used, or that it was even used in the context of any of these contracts with the Hines or this other unidentified entity. So I think on behalf of the attorneys specifically, I think, because they were acting in the scope of their legal representation, I think that covers the waterfront of these causes of action. Since they were acting as attorneys, the court correctly granted the motion to dismiss them with prejudice for each of these causes of action. And with regard specifically to the cause of action for conspiracy, which I believe was count for the 1985 cause of action, I think all of the defendants, that was properly dismissed with prejudice by Judge Bennett because they were all acting within the context of their relationship with the corporation. And again, I would focus the court on specifically what's pled in the complaint. It's very limited and it's very specific that they were all acting in very specific capacities and in very specific circumstances. So I think the court correctly dismissed those claims with prejudice. And I see my time's up if the court has any further questions. Thank you. Thank you. Mr. Wineland? Yes. Initially, I'd like to address the court's concern with respect to count number two, which dealt with the 1981 claim as to the Hineses. But we also have count number one, which was an interference with my client's contracts with their clientele who were African American as well. So that's separate and distinct from count two that dealt with the contract with the Hines for the purchase of the business. I just wanted to make that clear in response to their arguments. Number two, the doctrine of intra-corporate immunity deals with a director. An officer can't conspire with its own corporation. However, we have three individuals. First of all, the complaint only alleges the co-conspirators were Brown, Sachs, and Bell, as we identified each party. We do, granted, allege that there are agents, servants, and employees of both. But we have two corporations here. We have Brown Enterprises, David S. Brown Enterprises, and 100 Painters Mill, LLC. You allege that there were agents, servants, or employees of Painters Mill and or Brown Enterprises. Correct. And we don't know. And two corporations can conspire against each other. No. But if you look at the – this is what's amazing. If you look at the landlord-tenant actions, okay, and even though Painters Mill was the signatory to the lease, they were brought by David S. Brown. And David S. Brown appeared at the hearing in bankruptcy court. I don't know how. I don't know why. But David S. Brown, not a party to the lease, was the one instigating those actions. That's why I think it was premature at this stage to assume those facts and who they were working for because they were working for various corporations in various ways. Except your complaint alleges that only the one corporate entity was the lessor. That's correct. And in their response to the motion for – in their motion to dismiss them for summary judgment, they allege and go on about the landlord-tenant actions. I thought you wanted us to look at the complaints only. I do. And then we don't get to the point of – Well, it seems to me the complaint, if we take the complaint fairly, and it probably is fairly, you don't allege any involvement of Brown Enterprises. Except in the generic term when you use the word defendants. It's true. Yes. You basically attach the lease and it shows the parties. And the landlord is 100 Painters Mill. And the lessee is Painters Mill Grill. And those are the two corporate parties involved in which is subject to the 1981, 82, and 85 claims. And I completely agree, Your Honor. The only reason I say that is because Judge Bennett went outside of the pleadings and went to public record and saw the landlord-tenant actions against my client who were brought by Brown. That's why I mention it. And there is a relationship between these companies that I can't figure out. There is – who these individual lawyers were working for, if they were working for them as lawyers, is not a legitimate complaint. And I can't figure that out either. You say in your brief, again, that they were lawyers. That's because Judge Bennett said that. Well, you call them lawyers in your brief when you're laying out the facts. I do because I'm stuck with that from Judge Bennett's opinion. Why are you stuck with it? Because he said it and he dismissed the complaint on the basis of that. You don't claim in your brief that they're not lawyers. I do not. I do not. All right. Thank you, Your Honor. Yeah, thank you. We'll come down and greet counsel and then proceed on to the next case.
judges: Paul V. Niemeyer, Allyson K. Duncan, Henry F. Floyd